**JAMES J. WEST LLC**
105 North Front Street
Suite 205
Harrisburg, PA 17101
(717) 233-5051
(717) 234-7517

---

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Caroline Heath | : No. |
|       Plaintiff | : |
| | : |
| v. | : |
| | : |
| PENNSYLVANIA TURNPIKE COMMISSION, TIMOTHY J. CARSON, J. WILLIAM LINCOLN, PASQUALE T. DEON, SR. and JOSEPH G. BRIMMEIER, GEORGE M. HATALOWICH, NIKOLAUS H. GRIESHABER, PATRICIA F. SCHLEGEL and JOHN DOE I | : (Filed Electronically) |
| All individuals sued in their official and individual capacities | : JURY TRIAL DEMANDED |
|       Defendants | : |

**COMPLAINT**

Plaintiff, Caroline Heath, brings this action for compensatory and punitive damages against all Defendants, in both their individual and official capacities, for violating rights secured to her under the Constitution of the United States of America, 42 U.S.C §§1983, 1981, such as her rights to freedom of speech, political and familial association, equal protection of law and contract and breach of her express and/or implied contract of employment relating to promotions.

## Parties

1. The Plaintiff Caroline Heath is an adult individual and citizen of the United States residing in Dauphin County, Pennsylvania. She is an employee of the Pennsylvania Turnpike Commission.

2. The Defendant, the Pennsylvania Turnpike Commission (hereinafter "Commission"), was created by statute having powers to act in the construction, operation and maintenance of the Pennsylvania Turnpike. By statute, the Commission consists of five members being the Secretary of Transportation (or the Deputy Secretary of Highway Administration) and four Commissioners appointed by the Governor by and with the advice and consent of two-thirds of the members of the Senate. 36 P.S. §652(d).

3. The Defendants Timothy J. Carson, J. William Lincoln and Pasquale T. Deon, Sr., were at all relevant times the duly appointed Pennsylvania Turnpike Commissioners that actually made the hiring and promotion decisions in this case. The Chairman position was vacant because of the termination of Mitchell Rubin on March 23, 2009 by Pennsylvania's Governor. The Commissioners are sued in their official and individual capacities.

4. The Defendant Joseph G. Brimmeier is the Chief Executive Officer for the Commission and he is involved in all hiring and promotion decisions. He was also a member of the Administration and Personnel Committees that implemented, administrated and enforced hiring and promotion procedures. He is sued in his official and individual capacities.

5. The Defendant George M. Hatalowich is the Chief Operating Officer of the Commission and involved in all hiring and promotion decisions. He was also a member of the Administration and Personnel Committees that implemented, administered and enforced hiring and promotion procedures. He is sued in his official and individual capacities.

6. The Defendant Nikolaus H. Grieshaber is the Chief Financial Officer and had jurisdiction over the hiring and promotion decisions made in this particular case having participated in and overseen the interview and recommendation process. He was also a member of the Administration and Personnel Committees that implemented, administrated and enforced hiring and promotion procedures. He is sued in his official and individual capacities.

7. The Defendant Patricia F. Schlegel is the Director of Human Resources and has jurisdiction over the promotion and hiring decisions and the creation and implementations of procedures in the Human Resources Department. She was also a member of the Administration and Personnel Committee that implemented, administrated and enforced hiring and promotion procedures. She is sued in her official and individual capacities.

8. The Defendant, John Doe 1 is an unknown individual who, upon information and belief, participated in and is responsible for the actions taken by the other Defendants that deprived Plaintiff Caroline Heath of her rights to be considered for promotion without improper political influence. This unknown individual supported

through patronage and influence peddling a politically connected candidate for the position sought by Plaintiff Caroline Heath even though this politically connected individual was not qualified for the position being sought.

9. At all times relevant hereto, all Defendants were acting under color of state law and/or were in conspiracy with those acting under color of state law to violate the Plaintiff Caroline Heath's rights as outlined herein.

10. All of the above Defendants, with the exception of John Doe I, are policymakers and senior level executives for the Commission who acted intentionally or with deliberate indifference to ignore the promulgated policy of non-political merit selection discussed in detail below and instead implemented a policy whereby new positions and promotions made by the Commission were improperly and unlawfully influenced by political considerations, "patronage" and "influence peddling" in violation of the rights of the Plaintiff Caroline Heath and numerous others, said rights established by the First Amendment, the Equal Protection Clause and federal statutes 42 U.S.C. §§1981 and 1983 as set forth herein.

## Jurisdiction and Venue

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal Question) and 28 U.S.C. §1342 (Civil Rights). Supplemental jurisdiction is invoked pursuant to 28 U.S.C. §1367 insofar as it may be applicable to claims of an express or implied contractual right to consideration for promotion without political

considerations, "patronage" and "influence peddling" which arises out of the Commission's formally promulgated procedures.

12. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because the events giving rise to the claims set forth herein occurred in said District and the parties reside in said District.

## Introduction

13. Based upon long established custom, practice, policy and usage, the Commission's hiring and promotion decisions were made under the political patronage system whereby such decisions were substantially influenced by, if not totally controlled by, political considerations with individuals obtaining both positions and promotions based upon their political contacts and through what is commonly known as the "patronage system" and "influence peddling."

14. The constitutional legality of this system of political hiring and promotions that existed at the Commission was called into question by a series of United States Supreme Court decisions which made it clear that such political considerations could not be substantial factors in hiring and promotion decisions unless the employee involved was a policymaking employee or held a confidential position. See, *Elrod v. Burns*, 427 U.S. 347 (1976). Subsequent Supreme Court decisions required that the hiring authority had the burden to demonstrate that political affiliation is an appropriate requirement for the effective performance of the particular public position involved. *Branti v. Finkel*, 445 U.S. 507 (1980). Finally, in 1990, the Supreme Court made clear that the First Amendment

clearly protected non-policymaking public employees from promotion decisions which were substantially influenced by political considerations such as the "patronage system" or "influence peddling." *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990)

15. The Commission reacted to this series of decisions in 1992 by hiring outside counsel and, in consultation, promulgating Policy Letter 65 entitled *Policy and Procedure for Promoting Employees.* This Policy was aimed at compliance with the Supreme Court's *Rutan* decision, *supra*., holding that public employees could be liable under 42 U.S.C. §1983 for political discrimination in the promotion process. See *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 665, 659 (3d Cir. 2002).

16. The procedures set up in 1992 provided for the proper posting of job vacancies, the submission of certain required materials by interested candidates, the selection of an interview committee, forwarding of the top candidates to a Personnel Committee along with written answers to question setting forth a selection criteria, the selection of a single candidate by the Personnel Committee and, finally, the forwarding of the name of the selected candidate to the Commission that by statute must make the final decision. See, *Goodman v. Pennsylvania Turnpike Commission*, *supra*., at 659-660. This procedure promised Commission employees non-political merit selection promotion consideration as required by the Constitution.

17. The procedures originally set forth in Policy Letter 65 eventually were incorporated into Policy Number 2.7 of the Commission effective August 22, 2001, and

entitled *Policy and Procedure for Promoting Employees* which provides in pertinent part as follows:

> E. <u>Procedures:</u>
>
> 1. At a minimum, vacancy notices for all positions which are subject to the provisions of this Policy Letter will be posted at every Commission work location for at least ten working days.
>
> 2. Candidates for any position that has been posted must submit a written expression of interest, which may be in the form of an updated employment application or resume and a copy of their most recent performance evaluation, if available, (collectively referred to as the "application") to the Human Resources Department (HR) no later than the close of business on the last day identified in the posting.
>
> 3. HR will acknowledge receipt of all applications. An applicant who does not receive such acknowledgment is under an obligation to immediately contact HR to determine the circumstances under which the application was not acknowledged.
>
> 4. HR will review all of the applications to determine which applicants meet the minimum educations, experience and training requirements for the position. It is the candidate's responsibility to ensure his or her work history and educational, experience, and training background is explained in sufficient detail for this determination to be appropriately completed.
>
> 5. HR will forward to the Chief/Director of the department in which the vacancy exists, all of the applications which HR determines meet the minimum educational, experience and training requirements for the position.
>
> 6. Generally, the Chief/Director or his/her designee will interview all applicants whose applications have been forwarded by HR. In the event an unusually large number of

applications are received, the Chief/Director has the authority to reduce the number of applications to be interviewed.

7. The department manager and the respective Chief/Director will follow Commission procedures in conducting interviews. Interviews will be conducted using the same job-related questions for all applicants. A written summary will be made of each interview.

8. Each candidate will be evaluated based upon a qualitative evaluation of his or her education, experience and training as it compares to the job requirements; as well as the results of the interviews and reference checks.

9. The department manager, subject to the review and approval of the respective Chief/Director, shall, consistent with and in conformance with all applicable Commission policies, present recommendations of not more than three applicants to the Administration Committee in the form of a short, written supporting statement. If no applicant is recommended as a result of this process, the Director of Human Resources shall, in consultation with the Chief/Director, use professional hiring procedures to identify and recommend one individual to the Administration Committee.

10. The Administration Committee shall review the recommendation(s) and recommend one individual to the Commission. The Administration Committee will determine the appropriate salary level for the selected candidate in accordance with the Salary Administration Policies and Procedures.

11. The Commission has the discretion to accept the recommendation of the Administration Committee, to request additional information about the recommended candidate, to defer or to decline to fill the position.

12. HR will notify all candidates who applied of the outcome of the selection process no later than two weeks after Commission action.

  13. The Director of Human Resources will develop standardized procedures to implement this policy.

  18. The alleged purpose of the above-described procedures was to facilitate the selection of appropriate merit candidates for promotion by insuring qualified candidates of an equal opportunity for promotion free from political influence based upon "political affiliation and support", the "patronage system" and the "influence peddling" that had previously tainted and controlled the promotion process at the Commission. In truth and fact, the way the policy has been implemented and manipulated by the Defendants, its real purpose has been to provide cover for the Commission and designees who process and handle hiring and promotion decisions so as to allow the continued use of political considerations such as "patronage" and "influence peddling" to control hiring and promotion decisions as an established custom, practice, policy and usage of the Commission. The elaborate written policy of merit non-political selection was simply lip service and window dressing to provide plausible deniability in the event the Commission's use of political considerations such as "patronage" and "influence peddling" was challenged.

  19. The named Defendants have conspired to subvert the written merit non-political selection procedures and their purpose of complying with the *Rutan* decision through numerous and sundry machinations which have repeatedly, unsuccessfully neutralized the merit selection procedures and allowed the selection of unqualified candidates who have political connections and credentials to the prejudice of regular

Commission employees (who are in fact qualified for said positions based on merit) so as to cause the less qualified candidate with the appropriate political connections and credentials to be selected in violation of the Commission's own policy and the constitutional rights of the true merit candidates.

20. The machinations the Defendants used to interject political considerations into the merit selection promotion process include, but are not limited to, manipulating the hiring panel and Committee so that politically connected candidates are selected to have their names sent forward for hire or promotion and by simply ignoring the procedures entirely and sending the politically connected outside candidate's name forward for selection by the Administration Committee and/or the Commission.

21. These machinations are usually initiated by someone with political influence contacting a Commissioner or a senior level Commission employee who is on the Administration Committee or in charge of Human Resources and identifying the politically connected candidate they desire to be selected and this individual will then subvert and influence the merit selection system so as to allow the politically connected candidate to be selected.

22. In some instances, politically connected candidates are merely presented to the Commissioners for approval at their regular meeting so that the entire selection process occurs at a single meeting of the Commissioners and a politically connected candidate is placed in a position in clear violation of the requirements of the *Rutan* case and the Commission's own merit selection policy.

23. The Plaintiff Caroline Heath has attempted to apply for a position where such a politically connected "stealth candidate" was preordained for selection through such manipulation of the Commission procedures and brings this suit seeking damages and equitable relief.

### Caroline Heath

24. Plaintiff Caroline Heath has worked at the Commission since August 2000, presently holding the position of a Claims Administrator in the Risk Management Department, where she analyzes claim forms to determine insurance coverage, liability and property recovery under the Commission's self-insured insurance program.

25. Plaintiff Caroline Heath was evaluated for job performance for the period July 1, 2008 through June 30, 2009, and achieved an overall rating of commendable. She has always received good employee evaluations since becoming a Commission employee.

26. Plaintiff Caroline Heath has been politically neutral and apolitical not overtly supporting either the Democratic or Republican political parties. She is a career Commission employee interested in advancing her career based upon competence and merit as opposed to "patronage" and "influence peddling" and relied upon the Commission written policy of merit selection.

### The Credit Collection Supervisor Position

27. In April, 2009, a position as a credit and collections supervisor was announced by the Commission's Human Resources Department.

28.     Plaintiff Caroline Heath was qualified for such position and submitted an appropriate application through the Human Resources Department.

29.     On April 24, 2009, Plaintiff Caroline Heath was interviewed for the Credit and Collections Supervisor position by a hiring panel consisting of Sharon Jones, Alphonse Lepore and Kathy Sabo.

30.     On April 27, 2009, an external candidate named Thomas J. Gajewski was interviewed by a different panel, consisting of the Defendant Nikolaus Grieshaber Alphonse Lepore and Theodore Rusenko.

31.     After the interviews Plaintiff Caroline Heath was informed that she was the number one candidate but "the third floor" made them choose Thomas J. Gajewski. The "third floor" as used in this context is a reference to the Commissioners, the Chief Executive Officer and, Chief Operating Officers because their offices are located on the third floor of the Pennsylvania Turnpike Commission's main office building.

32.     After the interview, Plaintiff Caroline Heath was also informed that she was one of the three names sent up to the Administration Committee but that Thomas J. Gajewski's name was not sent forward further indicating a violation of the Commission's own merit selection policy.

33.     On May 6, 2009, Plaintiff Caroline Heath was formally notified that another candidate had been selected for the Credit and Collection Supervisor position. This candidate was announced as Thomas J. Gajewski – an external candidate coming from outside the ranks of present Commission employees.

12

34. The external candidate Thomas J. Gajewski was appointed by the Commission to the position of Credit Collection Supervisor. He held that position for five months during which he repeatedly bragged about his political connections and clout. He was terminated from the position because of incompetence and inability to perform the work before the end of his six month probationary period.

35. Records of Berks County show that Thomas J. Gajewski held the elected political office of Berks County Commissioner but lost his bid for re-election in 2008 and then applied to the Commission for a position through some yet to be disclosed mechanism.

36. To this day, the position of Credit Collection Supervisor has not been re-advertised or announced by the Commission subsequent to Thomas J. Gajewski's termination.

37. Based on information and belief, Thomas J. Gajewski was not legitimately on the list of three eligibles prepared by the interviewers for the Credit Collection Supervisor position. In the alterative, if he was on the list of three eligibles prepared by the interviewers for the credit collection supervisor position, he was placed there based upon political connections, "patronage" and "influence peddling" as a preordained candidate not as a merit selectee.

# COUNT I
### Violation of First Amendment
### Denial of Promotion Due to Influence Peddling
### 42 U.S.C. §1983

38.     The allegations of paragraphs 1 through 37 are incorporated by reference herein as though fully set forth.

39.     The Plaintiff Caroline Heath was eligible for promotion and for consideration for promotion under the rules, regulations and procedures of the Commission.

40.     The position that Caroline Heath applied for, credit and collections supervisor, did not require political association or belief as a predicate to promotion to said position, nor did it require a confidential employee and, to the contrary, the position was open to all qualified individuals regardless of political persuasion based on merit selection under the Commission's own procedures.

41.     Under the Commission procedures each of the named Defendants was a policymaker and senior level employee charged with enforcing the Commission's written "no politics/merit selection" policy and had personal involvement in adjudicating and selecting the individual entitled to the promotion sought by the Plaintiff Caroline Heath.

42.     Each of the Defendants was fully aware through long experience with the Commission that the "no politics/merit selection" policy and procedures of the Commission were being systematically circumvented so that politically favored candidates were being selected for employment and promotion to merit selection positions through

"patronage" and "influence peddling" to the prejudice of more qualified, non-political merit Commission employees in clear violation of decisional law of the United States Supreme Court as well as Commission regulations created to implement said decisional law, i.e., in violation of the Constitutional and contractual equal protection rights of the passed over merit candidates, 42 U.S.C. §§1981, 1983.

43.     Since 1992, when procedures were put in place by the Commission to protect employees covered by the *Rutan* case, customs, practices and usages had been systematically developed and implemented by the named Defendants aimed at circumventing those procedures. The existence and use of these practices and procedures which reinstated and continued the use of "influence peddling" and "patronage" to fill positions and promotions within the Commission was open, notorious and well known to numerous employees of the Commission including the named Defendants in this case. When positions or promotions were filled through the use of "patronage" and "influence peddling," the employees of the Commission would often use the phrase "that's the way things are" to euphemistically describe this process whereby the Commission ignored its own "merit selection" processes and implemented a *de facto* "patronage" or "influence peddling" policy. The named Defendants in this case were knowledgeable policymakers and senior level employees who implemented and circumvented procedures so that politically connected candidates (some of whom were totally incompetent) were hired, promoted and placed in positions that should have been awarded to qualified merit selection candidates.

44. In the present case the failure to promote the Plaintiff Caroline Heath and the hiring of Thomas Gajewski to the position that she sought was the result of "patronage" and "influence peddling" and the key consideration and motivating factor causing the Defendants to reject the Plaintiff Caroline Heath and to hire Thomas Gajewski were his political connections, the "patronage system" and "influence peddling" as outlined herein.

45. Each of the named Defendants knew, supported and caused, or was deliberately indifferent to, the fact that the selection of Thomas Gajewski was primarily motivated by politics and political considerations to the prejudice of the Plaintiff Caroline Heath and the named Defendants allowed the selection to go forward and/or took affirmative steps to see that Thomas Gajewski was improperly and illegally selected for this merit selection position in violation of the Commission's written policy and in furtherance of the *de facto* policy of "patronage" and "influence peddling" outlined above.

46. Based on information and belief it is alleged that many of the named Defendants were fully aware that Thomas Gajewski was not qualified for the position and incompetent to do the position and that Caroline Heath was imminently qualified for the position and fully able to perform its functions. At a minimum, the Defendants did not care whether Thomas Gajewski was incompetent and acted to subvert the procedures in place and cause him to be hired for political reasons having nothing to do with merit selection.

47. In addition to the above allegations, all the Defendants were in a position where they could have stopped the use of "patronage" and "influence peddling" in such promotion decisions by simply properly exercising the authority they possessed by virtue of their state positions. They made a conscious choice not to do so and "to go along to get along."

48. All the Defendants were acting under color of state law or in the case of John Doe I were in conspiracy with other named Defendants who were acting under color of state law.

**WHEREFORE**, the Plaintiff Caroline Heath respectfully requests this Honorable Court to award her compensatory damages, back pay, front pay, punitive damages, expenses, attorneys fees and equitable relief in the form of an Order directing the Commission that she be placed in employment in the unfilled position of credit and collection supervisor and that the Commission be enjoined from violating its merit selection personnel policies in favor of "patronage" and "influence peddling" in selecting candidates for hire and promotion to future non-confidential and non-political merit positions.

## COUNT II
### Violation of 42 U.S.C. §1981 and Equal Protection

49. The allegations of paragraphs 1 through 48 are incorporated by reference herein as though fully set forth.

50. The Plaintiff Caroline Heath is constitutionally entitled to equal protection of law as a member of a protected class (apolitical employees entitled to promotion on merit) or a class of one (intentionally treated different for no rationale basis) and, furthermore, enjoys statutory entitlement to equal rights under 42 U.S.C. §1981.

51. 42 U.S.C. §1981(a) contains the following regarding the entitlement to equal rights of citizens of the United States:

> (a) Statement of Equal Rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. §1981(a)

52. While this statute talks in terms of rights enjoyed by white citizens, it has been held by the Supreme Court of the United States that it also protects the rights of white citizens as well as all other citizens of the United States. 42 U.S.C. §1981 defines making and enforcing contracts and protection against impairment as follows:

> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "made and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

>   (c) Protection against impairment
>
>   The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. §1981(b), (c)

53. This statute protects public and private employees from unconstitutional depravation of rights including those rights defined by the *Rutan* decision to be free from discrimination based upon "patronage," "influence peddling" and political considerations under circumstances set forth in the previous paragraphs. These rights are also protected under the equal protection clause of the Constitution.

54. A violation of 42 U.S.C. §1981 and the Equal Protection Clause can be enforced either through an implied private right of action and/or through the Civil Rights Statute, 42 U.S.C. §1983.

55. For the reasons set forth in the preceding paragraphs, the Plaintiff Caroline Heath contends that the Defendants have violated her rights under 42 U.S.C. §1981 and the Equal Protection Clause of the Constitution and that she has suffered damage by their actions.

**WHEREFORE**, the Plaintiff Caroline Heath respectfully requests this Honorable Court to award her compensatory damages, back pay, front pay, punitive damages, expenses, attorneys fees and equitable relief in the form of an Order directing the Commission that she be placed in employment in the unfilled position of credit and collection supervisor and that the Commission be enjoined from violating its merit

selection personnel policies in favor of "patronage" and "influence peddling" in selecting candidates for hire and promotion to future non-confidential and non-political merit positions.

        Respectfully Submitted,

        **JAMES J WEST LLC**


        s/ *James J West*
        James J West
        105 North Front Street, Suite 205
        Harrisburg, PA 17101
        (717) 233-5051
        (717) 234-7517 - fax
        jwest@jwestlaw.com

Dated: March 4, 2010        Counsel for Plaintiff