# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLINE HEATH, | : |
| Plaintiff | : |
| | : No. 1:10-CV-0494 |
| v. | : |
| | : |
| PENNSYLVANIA TURNPIKE COMMISSION, *et al.*, | : J. RAMBO |
| Defendants | : |

## **M E M O R A N D U M**

Before the court is individual Defendants Timothy J. Carson, J. William Lincoln, Pasquale T. Deon Sr., Joseph G. Brimmeier, George M. Hatalowich, Nikolaus H. Grieshaber, and Patricia F. Schlegel's, motion to dismiss Plaintiff Caroline Heath's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be denied.

**I.      Background**

   **A. Facts**

      **1. The Parties**

Plaintiff, Caroline Heath, and all individual Defendants are employees of the Pennsylvania Turnpike Commission ("PTC"). (Compl. ¶¶ 1-7.) Heath has been employed by the PTC since August of 2000, and works as a Claims Administrator in the Risk Management Department. (*Id.* ¶ 24.) Since starting with the PTC, Heath has had good employee evaluations, and her 2008-2009 evaluation rated her performance as "commendable." (*Id.* ¶ 25.) During her time with the PTC, Heath has remained politically neutral and/or apolitical. (*Id.* ¶ 26.)

The PTC is charged with constructing, operating and maintaining the Pennsylvania Turnpike and is comprised of five members — the Secretary of Transportation and four Commissioners. (*Id.* ¶ 2.) At all times relevant to this lawsuit, there was a vacancy on the Commission leaving only three Commissioners-Defendants Timothy J. Carson, J. William Lincoln, and Pasquale T. Deon, Sr. (*Id.* ¶ 3.) Defendant Joseph G. Brimmeier is PTC's Chief Executive Officer. (*Id.* ¶ 4.) Defendant George M. Hatalowich is its Chief Operating Officer. (*Id.* ¶ 5.) Defendant Nikolaus H. Greishaber is the Chief Financial Officer. (*Id.* ¶ 6.) Defendant Patricia F. Schlegel is PTC's Director of Human Resources. (*Id.* ¶ 7.) All four individuals were on the Administrative Panel in charge of proposing candidates for hire to the Commissioners. Plaintiff also names one John Doe Defendant who apparently helped in the actions of the other individual Defendants, however, this individual, like the PTC, is not a party to this motion. (*See id.* ¶ 8.)

### 2. PTC Hiring Policy

According to the Complaint, which cites to a series of United States Supreme Court caselaw as support, the PTC had a long standing policy of taking political considerations into account when hiring, firing, promoting and transferring employees. (*Id.* ¶¶ 13-16.) In 1992, the PTC reacted by issuing a policy letter titled, *Policy and Procedure for Promoting Employees*. (*Id.* ¶ 15.) In 2001, these policies were incorporated in what is called Policy Number 2.7, which states in relevant part:

> E. Procedures:
>
> > 1. At a minimum, vacancy notices for all positions which are subject to the provisions of this Policy Letter will be posted at every Commission work location for at least ten working days.
> >
> > 2. Candidates for any position that has been posted must submit a written expression of interest, which may be in the form of an updated employment application

2

or resume and a copy of their most recent performance evaluation, if available, (collectively referred to as the "application") to the Human Resources Department (HR) no later than the close of business on the last day identified in the posting.

3. HR will acknowledge receipt of all applications. An applicant who does not receive such acknowledgment is under an obligation to immediately contact HR to determine the circumstances under which the application was not acknowledged.

4. HR will review all of the applications to determine which applicants meet the minimum educations [sic], experience and training requirements for the position. It is the candidate's responsibility to ensure his or her work history and educational, experience, and training background is explained in sufficient detail for this determination to be appropriately completed.

5. HR will forward to the Chief/Director of the department in which the vacancy exists, [sic] all of the applications which HR determines meet the minimum educational, experience and training requirements for the position.

6. Generally, the Chief/Director or his/her designee will interview all applicants whose applications have been forwarded by HR. In the event an unusually large number of applications are received, the Chief/Director has the authority to reduce the number of applications to be interviewed.

7. The department manager and the respective Chief/Director will follow Commission procedures in conducting interviews. Interviews will be conducted using the same job-related questions for all applicants. A written summary will be made of each interview.

8. Each candidate will be evaluated based upon a qualitative evaluation of his or her education, experience and training as it compares to the job requirements; as well as the results of the interviews and reference checks.

9. The department manager, subject to the review and approval of the respective Chief/Director, shall, consistent with and in conformance with all applicable Commission policies, present recommendations of not more than three

> applicants to the Administration Committee in the form of a short, written supporting statement. If no applicant is recommended as a result of this process, the Director of Human Resources shall, in consultation with the Chief/Director, use professional hiring procedures to identify and recommend one individual to the Administration Committee.
>
> 10. The Administration Committee shall review the recommendation(s) and recommend one individual to the Commission. The Administration Committee will determine the appropriate salary level for the selected candidate in accordance with the Salary Administration Policies and Procedures.
>
> 11. The Commission has the discretion to accept the recommendation of the Administration Committee, to request additional information about the recommended candidate, to defer or to decline to fill the position.
>
> 12. HR will notify all candidates who applied of the outcome of the selection process no later than two weeks after Commission action.
>
> 13. The Director of Human Resources will develop standardized procedures to implement this policy.

(*Id.* ¶ 17.) These were the policies and procedures in place at all times relevant to this suit. The purpose of these policies was to ensure that qualified candidates were selected for open employment positions, and not individuals who merely had favorable political ties. (*Id.* ¶ 18.)

Heath claims that the Defendants collectively worked to undermine the established policies so that politically connected individuals would continue to receive positions above more qualified candidates. (*Id.* ¶¶ 19-21.) Heath claims that the Defendants were able to do this by having an individual with political influence contact either a Commissioner or a senior level PTC employee who is on the Administrative Committee, giving them the name of the individual they would like

4

to see fill the position. The politically connected candidate's name is then forwarded to the Commissioners, instead of more qualified, but less politically savvy, individuals who apply for the position. (*Id.* ¶¶ 20-21.) The Complaint also alleges that in some instances individuals with political ties are simply presented to the Commissioners at their regular meeting, thereby skirting the administrative process all together. (*Id.* ¶ 22.)

### 3. Position Vacancy

In April of 2009, a position as a Credit and Collection Supervisor was announced by the PTC's Human Relations Department. (*Id.* ¶ 27.) Heath alleges that she was qualified and applied for the position. (*Id.* ¶ 28.) On April 24, 2009, Heath was granted an interview. She was interviewed by a panel of three individuals not involved in this litigation. (*Id.* ¶ 29.) On April 27, 2009, another candidate, Thomas J. Gajewski, applied for the same position and was interviewed by Defendant Grieshaber, and two other individuals not named in this suit, one of which also interviewed Heath. (*Id.* ¶ 30.) Sometime after the interviews were conducted, Heath was told that she was the number one candidate but that "the third floor" had made them choose Gajewski. (*Id.* ¶ 31.) It was commonly understood that "the third floor" referred to the Commissioners, Chief Executive Officer Brimmier and Chief Operating Officer Hatalowich, because their offices were located on the Third Floor of the PTC building. (*Id.*) In addition to being told she was the number one candidate, Heath was also told her name was one of the three sent to the Administrative Committee, and that Gajewski's name was not forwarded. (*Id.* ¶ 32.) It is not clear from the complaint who told Heath that she she was the top candidate and that her name was forwarded on and Gajewski's was not. Nor is it clear in what order this series of events took place. However, on May 6, 2009, the PTC

announced that Gajewski was hired as the Credit and Collection Supervisor. (*Id.* ¶ 33.)

During the time Gajewski held this position Heath claims he repeatedly bragged about his political connections. Ultimately, after five months Gajewski was terminated, allegedly because of incompetence and an inability to perform the work assigned. (*Id.* ¶ 34.) Heath also claims that public records show Gajewski was a Berks County Commissioner until 2008 when he lost his bid for re-election. It was at this time that he sought employment with the PTC. (*Id.* ¶ 35.) The complaint alleges that Gajewski either was not on the list of three individuals forwarded to the Administrative Committee, or if he was, he was placed there illegitimately because of political reasons and not because he was qualified. (*Id.* at 37.) Since this incident, the Credit and Collection Supervisor position has not been re-advertised. (*Id.* ¶ 36.)

### 3. Procedural History

On March 4, 2010, Plaintiff filed her complaint. (Doc. 1.) On May 5, 2010, the individual Defendants filed the instant motion to dismiss, and the following day, a brief in support. (Docs. 5, 7.) Plaintiff responded on May 27, 2010, (Doc. 12), and Defendants replied on June 10, 2010, (Doc. 13). The motion is now ripe for disposition.

## II.     Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211

(quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly*

*relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

### III. Discussion

Heath claims that her First Amendment rights were violated when she was denied a promotion due to her lack of political activity and that the PTC and the individual Defendants were acting under color of state law in violation of 42 U.S.C. § 1983 when they took the adverse employment action against her.[1]

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[1] Plaintiff also brings a claim under 42 U.S.C. § 1981. However, Defendants state that Plaintiff's counsel has informed them she will not to proceed with this claim and neither party addresses it further.

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.' " *Nicini*, 212 F.3d at 806 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

The parties do not dispute that Defendants were acting under color of state law. Instead, Defendants argue that Plaintiff has failed to properly allege an actual violation of her First Amendment rights.

The Supreme Court has made clear that "promotions, transfers, recalls, and hiring decisions involving public employees may not be based on party affiliation and support unless the Government can show that party affiliation is an appropriate requirement for the position involved." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)). Thus, taking an adverse employment action based on someone's political tendencies constitutes a violation of the individual's First Amendment rights. *Id.* This protection extends to "government employees who lack a political

affiliation" or who are apolotical.  *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 268 (3d Cir. 2007).

To establish a political patronage discrimination claim, a plaintiff must satisfy the following three elements: "(1) that the employee works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision."  *Goodman*, 293 F.3d at 663-64.

The third prong implicitly requires a plaintiff to produce evidence sufficient to show a defendant knew of a plaintiff's political persuasion.  *Id.* at 664.  In addition, this prong is commonly called the causation prong — thus, the political preference must have been such substantial or motivating factor so as to cause the decision not to promote.  *Id.* at 673.

Defendants have conceded that Heath works for a public agency and that her failure to be promoted was an adverse employment action.  (Defs.' Br. in Supp. of Mot. to Dismiss, at 8, n. 3, 4.)  Therefore, the first prong has been satisfied.  Likewise, Plaintiff properly alleges that she is apolitical and did not aline herself with any political party, and has thus satisfied the second prong as well.  *See Galli*, 490 F.3d at 268.  That leaves the third prong– did Defendants know of Heath's lack of political affiliation and did this knowledge play a substantial part in her lack of promotion?  Heath has alleged sufficient facts that plausibly show that her apolitical tendencies were a substantial or motivating factor in the decision not to hire her to the Claims and Collections Supervisor position.

The complaint alleges that the individual Defendants were either Commissioners in charge of the ultimate hiring decision, or on the Administrative

Panel which made the final recommendation to the Commissioners. Heath claims that she was the top candidate, and was on the list of three names that was sent to the Administrative Panel. She also alleges that Gajewski's name was not on this list yet he was selected for the job. Plaintiff claims she was told that Mr. Gajewski's was selected due to pressure from the "third floor," and that it was common knowledge this was a reference to the Commissioners, the Chief Executive Officer, and the Chief Operating Officer. Heath claims Gajewski was politically active, having been Berks County Commissioner until 2008, when he lost his bid for re-election. Heath alleges that these political connections allowed Gajewski to receive a position within the PTC for which he was not qualified, instead of Heath who was qualified, but not politically active. Although the court makes no determination regarding the chances of Heath's ultimate success on the merits, at this stage in the litigation, Heath has alleged sufficient facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Heath has sufficiently alleged, and thus the court can reasonably draw the inference, that because Gajewski's name was not forwarded to the Administrative Panel, yet he received the position despite not being qualified, that the administrative process was circumvented for political reasons. As such, Defendants' motion will be denied.

## IV.     **Conclusion**

Plaintiff has pled facts sufficient to allege political patronage discrimination in violation of her First Amendment rights and 42 U.S.C. § 1983.  As such, the individual Defendants' motion to dismiss will be denied.  An appropriate order will issue.

                                                      s/Sylvia H. Rambo
                                                    United States District Judge

Dated:  July 9, 2010.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CAROLINE HEATH,**
   **Plaintiff**

  v.

**PENNSYLVANIA TURNPIKE COMMISSION,** *et al.*,

   **Defendants**

:
:
:
: No. 1:10-CV-0494
:
:
: J. RAMBO
:
:
:
:

## **O R D E R**

  For the reasons contained in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**, the individual Defendants' motion to dismiss, (Doc. 5), is **DENIED**.

               s/Sylvia H. Rambo
               United States District Judge

Dated: July 9, 2010.