**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLINE HEATH,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:10-CV-0494** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA TURNPIKE** | : | **J. RAMBO** |
| **COMMISSION, et al.,** | : | |
| **Defendants** | : | |
| | : | |

**M E M O R A N D U M**

Before the court is Defendants Pennsylvania Turnpike Commission ("PTC"),[1] Timothy Carson, J. William Lincoln, Pasquale T. Deon, Sr., Joseph G. Brimmeier, George M. Hatalowich, Nikolaus H. Greishaber,[2] and Patricia F. Shlegel's motion for summary judgment.  (Doc. 37.)  For the reasons that follow, the motion will be granted in part and denied in part.

---

[1]  Defendant PTC is listed in the first paragraph of Defendants' motion as moving for summary judgment.  However, neither party addresses PTC's liability in their brief.  As such, summary judgment will be denied as to the PTC and it will remain a party.

[2]  Defendant Grieshaber only moves to dismiss Plaintiff's claim for punitive damages, but not the First Amendment claim.  Defendants conceded there is sufficient evidence for the First Amendment claim against Greishaber to proceed to trial.  (Defs.' Br. Supp. Mot. for Summ. J., at 2, n.2.)

## I.        BACKGROUND

### A.        Facts[3]

Plaintiff, Caroline Heath, is a Claim Administrator at the PTC.  (Defs.'
Statement of Material Facts ("SMF") ¶ 1.)  She brings this action pursuant to 42
U.S.C. § 1983 alleging that she was not promoted to the position of Credit and
Collections Supervisor because she was not "politically connected," which is a
violation of the First Amendment.  (*Id.*)  The Credit and Collections Supervisor
position was instead awarded to Thomas Gajewski, who, according to Plaintiff, was
less qualified but was politically connected.  (*Id.*)

Gajewski is a former Berks County Commissioner who, when
unemployed in 2008, contacted individuals in both the public and private sectors in
an effort to gain employment.  (*Id.* ¶ 2.)  One such individual was State Senator
Michael O'Pake who informed Gajewski that there were two vacant positions at the
PTC.  (*Id.* ¶ 5.)  Gajewski filled out a general application for employment with the
PTC, listing an interest in management, human resources, and marketing positions.
(*Id.* ¶ 5.)  In addition, Senator O'Pake called Defendant Brimmeier, the Chief
Executive Officer ("CEO") of the PTC, and explained that Gajewski was a former
employee and good friend and asked if Brimmeier would meet with Gajewski.  (*Id.* ¶
6.)  At the request of Senator O'Pake, Brimmeier met with Gajewski on February 4,

---

[3]        In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148–49 (3d Cir. 2002), the Third
Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Engineers,* 903 F.2d 253,
259 (3d Cir.1990) that "the district courts in this circuit [must] accompany grants of summary judgment
hereafter with an explanation sufficient to permit the parties and this court to understand the legal
premise for the court's order."  *Vadino*, 903 F.2d at 259.  Here, the court will identify those facts that are
subject to genuine dispute, and cite to the record in order to highlight the precise nature of any disputed
facts.  The court will not cite to the record where the facts are undisputed; instead, the court will rely on
the statements of material fact and admissions submitted by the parties.  The materiality of any
genuinely disputed facts will be analyzed in the discussion section below.

2009.  (*Id.* ¶ 9.)  On this date, Brimmeier had a copy of Gajewski's resume and a letter of recommendation from Senator O'Pake.[4]  (*Id.* ¶ 9.)  During this meeting, Defendant Hatalowich, the Chief Operating Office ("COO") for the PTC, also met Gajewski.  (*Id.* ¶ 9.)  Two positions were discussed during the meeting, one was the position in question, the other was in real estate.  (*Id.* ¶ 10.)  During this meeting, Gajewski expressed some concern about his ability to use the computer program Excel, and was told by Brimmeier that he could "explain that in a further interview."[5] (Dep. Gajewski, at 33.)  Gajewski was told he would have to interview before a committee, and was not offered a job at this point.  (Defs.' SMF ¶ 11.)  After meeting with Gajewski, Bremmeier informed Greishaber that he had met with Gajewski and thought he would be a good fit if the finance department had any openings.[6]  (Dep. Bremmeier, at 58.)

On March 26, 2009, Greishaber contacted Patricia Schlegal, the PTC's Director of Human Resources ("HR"), and asked that the position for Credit and Claims Supervisor be posted and that outside individuals be allowed to apply.[7]

---

[4]    The parties dispute whether this meeting was an initial interview, or simply a "meet and greet" between the two.  Regardless, because the motion will be denied based on the totality of the facts in this case, this dispute is immaterial.   (Defs.' SMF ¶ 9 & n.2; Pl.'s SMF ¶ 9.)

[5]  The court notes that although Brimmeier does not specifically deny this interpretation of the meeting, he does claim that he is unable to recall the Excel conversation or the discussion with Gajewski about the two open positions. (Dep. Brimmeier, at 57:29.)

[6]    In order of rank at the PTC, it goes from highest to lowest — CEO, COO, CFO.

[7]    The parties dispute to what extent outside individuals were allowed to apply. Greishaber and Hatalowich both claim it was a common occurrence and that all positions are open to external candidates should a department head request as much. (Dep. Greishaber at 36:10-15; Dep. Hatalowich at 44:16-18, 45, 46:11-12.)  Plaintiff refutes this contention by pointing to a July 1997 PTC Performance Audit which states the following:

(continued...)

(Defs.' SMF ¶ 16.)  Pursuant to standard PTC policy and practice, Greishaber's request for external candidate applications was submitted to the Commission for approval and was granted.[8]  (*Id.* ¶¶ 18, 19.)  Between April 13, 2009, and April 24, 2009, the Credit and Claims Supervisor position was posted for both internal and external applicants.  (*Id.* ¶ 20.)

During this time frame, Bremmeier showed Gajewski's resume to Greishaber, and it was discussed that Gajewski would be a good fit for the Credit and Claims Supervisor position because of his past supervisor experience.  (*Id.* ¶ 21.) Greishaber expressed concern that Gajewski did not specifically have credit and collection experience, but Bremmeier believed that his past supervisory experience would suffice.  (Dep. Greishaber at 11:6-13;12:10-14.)

Patricia Hernjak is an employee in the PTC's HR division and is responsible for gathering the resumes for the Credit and Claims Supervisor position. (Defs.' SMF ¶ 26.)  After receiving the applications, it was Hernjak's job to make

---

[7](...continued)
It is the general policy of the [PTC] to fill vacancies in non-entry level positions by promoting current employees who are determined to be the best qualified candidates.  The Commissioners may make exceptions to the policy of promoting from within where they conclude that it is in the best interest of the [PTC].  This includes, but is not necessarily limited to, situations in which the Commissioners determine that (1) there is an individual outside the Commission who is particularly well-qualified for the position, or (2) there is no current employee who has sufficient skills, knowledge, experience or other qualifications.

(*See* Ex. 10, PTC Performance Audit, Report II, July 2007, at 82.)

The court finds there is a genuine issue of material fact regarding whether this is the current policy used by the PTC for placing employees, and, if so, if the placement of Gajewski was in compliance with this general policy.

[8]   At all relevant times to this complaint, the Commissioners included Defendants Timothy J. Carson, J. William Lincoln, and Pasquale T. Deon, Sr.  (Compl. ¶ 3.)

sure each applicant met the minimum requirements for the position available.  (*Id.* ¶ 27.)  Herjnak determined that both Plaintiff and Gajewski, along with four other applicants, met the minimum qualifications for the position.  (*Id.* ¶¶ 30, 32.)

Qualified applicants were forwarded to Sharon Jones, the immediate supervisor in the department where the Credit and Claims position was open.  (Dep. Jones, at 8; Defs.' SMF ¶ 36.)  Jones ranked each applicant — Plaintiff received a star beside her name indicating she was qualified, while Gajewski had "no exp." next to his name indicating she "did not consider his experience to be related to this position."  (Dep. Jones, at 18:6-7.)  Jones then chose three individuals to form a panel to conduct the interviews — these individuals included herself, Catherine Sabo, and Alphonse Lepore.  (Defs.' SMF ¶ 36.)  After the interview process, the interview panel discussed the candidates and picked who they wanted to recommend for the position.  (Dep. Jones, at 19:16-22.)  Jones was verbally told by either Greishaber or her immediate supervisor who reported to Greishaber, that Gajewski should be on the list of recommended candidates.  (*Id.* 22:1-3.)  Plaintiff, meanwhile, was among the top two ranked candidates.  (*Id.*)  After the committee selected their candidates, Catherine Sabo, who did not vote for Gajewski, was told by Jones that he was on the list because of his "political affiliation."  (Dep. Sabo, at 10:8-10.)  This was the first time Sabo had experienced a "political hiring."  (*Id.* at 14:15, 24.)  Lepore also allegedly told another employee that "someone was preordained for the job."  (Aff. Eileen Conroy, March 7, 2001, Ex. 14.)  Ultimately, Plaintiff, Gajewski, and one other individual were recommended by the interviewing panel for the Credit and Claims Collector position.

On April 28, 2009, an Administrative Committee met to discuss the three recommended candidates. (Defs.' SMF ¶ 51.) The Administrative Committee was normally comprised of Defendants Brimmeier, Hatalowich, Schlegal, and four other individuals not parties to this case. (*Id.* ¶ 54.) However, Bremmeier had delegated his duties to Hatalowich and had not attended an Administrative Meeting in several years. (*Id.* ¶ 55.) Pursuant to PTC policy and practice, Greishaber, as the CFO, was required to present and discuss each of the individuals and ultimately recommend his top candidate. (*Id.* ¶ 52.) Greishaber noted that none of the candidates had both supervisory and credit and collections experience, but that his ultimate pick for the top candidate was Gajewski. (*Id.* ¶¶ 56, 57.) The Administrative Committee ultimately approved Greishaber's recommendation and Gajewski's name was sent to the Commission for final approval. (*Id.* ¶¶ 53, 60.)

The Commission approved the recommendation of Gajewski and on May 6, 2009, he was offered the position of Credit and Claims Supervisor for the PTC. (*Id.* ¶ 63.) However, Gajewski struggled in his new position and was terminated within five months of commencing his employment. (*Id.* ¶¶ 65, 67.)

### B.    Procedural History

On March 4, 2010, Plaintiff filed suit (Doc. 1) alleging violations of her rights under the First Amendment to be free from political patronage discrimination pursuant to 42 U.S.C. § 1983.[9] On May 3, 2010, Defendants filed a partial motion to dismiss the complaint (Doc. 5). This motion was denied by memorandum and order dated July 9, 2010 (Doc. 20) and discovery ensued.

---

[9]    Plaintiff's original complaint contained a second count relating to a violation of 42 U.S.C. § 1981 and Equal Protection. However, prior to commencement of discovery, Plaintiff agreed to withdraw this count, thus, it will not be addressed. (Defs.' Br. Supp. Summ. J., at 2, n. 2.)

After extensive discovery and unsuccessful mediation, on February 21, 2011, Defendants filed a motion for summary judgment (Doc. 37) and brief in support (Doc. 38).  Plaintiff filed a brief in opposition on March 21, 2011, (Doc. 43), to which Defendants replied on April 4, 2011 (Doc. 45).  As such, the motion is ripe for disposition.

## II.        **LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party.  *Id.* at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party may not simply sit back and rest on the

allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.        DISCUSSION

### A.        Section 1983 Claim

Heath claims that her First Amendment rights were violated when she was denied a promotion due to her lack of political connections and that the PTC and the individual Defendants were acting under color of state law in violation of 42 U.S.C. § 1983 when they took the adverse employment action against her.

> Section 1983 states in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted).  To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law.  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).  "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  *Nicini*, 212 F.3d at 806 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

The parties do not dispute that Defendants were acting under color of state law.  Instead, Defendants argue that Plaintiff's claim fails as a matter of law because the record fails to show that the individual Defendants had sufficient personal involvement in the alleged political discrimination because they did not personally direct it, nor did they know and acquiesce in it.

The Supreme Court has made clear that "promotions, transfers, recalls, and hiring decisions involving public employees may not be based on party affiliation and support unless the Government can show that party affiliation is an appropriate requirement for the position involved."  *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)).  Thus, taking an adverse employment action based on someone's

political tendencies constitutes a violation of the individual's First Amendment rights. *Id.* This protection extends to "government employees who lack a political affiliation" or who are apolitical. *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 268 (3d Cir. 2007).

To establish a political patronage discrimination claim, a plaintiff must satisfy the following three elements: "(1) that the employee works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." *Goodman*, 293 F.3d at 663-64.

The third prong implicitly requires a plaintiff to produce evidence sufficient to show a defendant knew of a plaintiff's political persuasion. *Id.* at 664. This prong is commonly called the causation prong — thus, the political preference must have been such a substantial or motivating factor so as to cause the decision not to promote. *Id.* at 673.

It is not disputed that Plaintiff works for a public agency and that her failure to be promoted constitutes an adverse employment action. Instead, Defendants argue that, besides Greishaber, none of them had sufficient personal involvement or knowledge of the political discrimination that is alleged to have taken place. The court will address the individual Defendants according to their role in the failure to promote Plaintiff to the position of Credit and Claims Supervisor.

### i. **Defendants Brimmeier and Hatalowich**

Defendants Brimmeier and Hatalowich argue that their participation in the hiring of Gajewski was limited to a simple "meet and greet" session, and in the

case of Hatalowich, participating on the Administrative Committee.  These Defendants maintain that there is a sufficient factual basis to conclude as a matter of law that neither Defendant participated, or knew and acquiesced, in the alleged political discrimination.  The court disagrees.

The record indicates that Senator Michael O'Pake called Defendant Brimmeier, the CEO of the PTC, to inquire about employment for a former Berks County Commissioner — Thomas Gajewski.  Brimmeier followed up with this phone call by meeting with Gajewski and reviewing his resume and a letter of recommendation from Senator O'Pake.  During this meeting, Defendant Hatalowich, the COO of the PTC, also met with Gajewski.  Potential positions were discussed at this meeting, as was Gajewski's apparent concern that he might not have the skills to perform some of the duties of these positions.  Gajewski was informed about the interview process by either Brimmeier or Hatalowich.  After this meeting, Brimmeier called Greishaber, the Chief Technical Officer ("CTO") of the PTC, and said that he thought Gajewski would be a good fit in the finance department.  Although Greishaber had some concern about Gajewski's lack of credit and claims experience, Brimmeier believed his past supervisory experience could make up for this deficiency in his resume.

The only future interaction either Defendant had in the hiring process was Hatalowich's participation in the Administrative Committee meeting to pick a recommended candidate.  The court notes that although Brimmeier had not attended these meeting in years, he had assigned his participation rights to Hatalowich.  It was at this meeting that Greishaber recommended Gajewski for the position in question.

Based on this record, the court is not willing to conclude, as a matter of law, that Brimmeier and Hatalowich were not aware that Gajewski was hired for the position in question for political reasons. The fact that Brimmeier and Hatalowich first met with Gajewski after Brimmeier was approached by a state senator bolsters this conclusion. It was Brimmeier who called Greishaber to tell him Gajewski would be a good fit in the finance department. And it was Hatalowich who eventually voted for Gajewski to be recommended to the Commission as the Administrative Committee's preferred candidate. Greishaber did not move for summary judgment, and, in fact, Defendants admit there is enough evidence for the case to proceed against him. However, the court believes that a reasonable trier of fact could conclude that any political tendencies Greishaber had regarding Gajewski were influenced by Bremmeier and/or Hatalowich, two of his superiors at the PTC. As such, the motion for summary judgment will be denied as to Defendants Brimmeier and Hatalowich.

### ii. **Defendant Schlegal**

The only evidence on record regarding Defendant Patricia Schlegal is that, as Director of HR, she was asked by Greishaber to post the Credit and Claims Supervisor position and make it open to outside applicants. Pursuant to PTC policy, this request was forwarded to the Commissioners who approved the request. The Credit and Claims Supervisor position was posted from April 13, 2009, to April 29, 2009.

There is no evidence to suggest that Schlegal actively participated in any political discrimination, or knew of and acquiesced in any political

discrimination.  Therefore, Plaintiff's claims against Defendant Schlegal fail as a matter of law and will be dismissed.

### iii.  **Defendants Carson, Lincoln and Deon**

The only evidence that Commissioner Defendants Carson, Lincoln and Deon, participated in the hiring process was to approve the recommendation of Gajewski to the position in question.  Plaintiff offers no evidence that they suggested a particular candidate, or that anyone with political ties contacted any of the Commissioners.  Therefore, the court finds that nothing in the record suggests that Defendants Carson, Lincoln or Dean participated, or knew of and acquiesced in the alleged political discrimination of Plaintiff.  As such, Plaintiff's claims agianst these Defendants fails as a matter of law and summary judgment will be granted.

### B.  **Punitive Damages**

Defendants also move to have Plaintiff's punitive damages claims dismissed as a matter of law.  Punitive damages may be awarded "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir.2000).  In the instant case, the question of whether Defendants Brimmeier, Greishaber or Hatalowich acted with "reckless or callous indifference" will be a matter left for the jury, as the court is not willing to conclude at this stage in the litigation that a reasonable trier of fact could not conclude that, as a matter of law, these Defendants acted with the requisite culpability.  As for Defendants Shlegel, Carson, Lincoln and Deon, because summary judgment will be granted on the underlying Section 1983 claims, summary judgment will also be granted on the punitive damages claims.

## IV.        **CONCLUSION**

In accordance with the above, Defendants' motion for summary judgment will be granted in part and denied in part.  Because there is a genuine issue of material fact as to whether Defendants Bremmeier, Hatalowich, and Greishaber were personally involved, or knew of and acquiesced in, the alleged political discrimination against Plaintiff, summary judgment as to these Defendants will be denied.  However, summary judgment will be granted as to Defendants Shlegel, Carson, Lincoln, and Deon as there is no evidence in the record upon which a reasonable trier of fact could conclude that these individuals participated in, or knew of and acquiesced in, the political discrimination of Plaintiff.  Summary judgment will be denied as to Defendant PTC as no briefing was conducted on behalf of this party.  An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  April 20, 2011.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLINE HEATH,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **No. 1:10-CV-0494** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA TURNPIKE** | : | **J. RAMBO** |
| **COMMISSION, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum of law, it is

**HEREBY ORDERED** that, Defendants' motion for summary judgment (Doc. 37) is

granted in part and denied in part as follows:

1) The motion is **GRANTED** as to Defendants Patricia F. Shlegel,

Timothy J. Carson, J. William Lincoln and Pasquale T. Deon, Sr. on all grounds.

2) The motion is **DENIED** as to Defendants PTC, Brimmeier,

Hatalowich and Greishaber on all grounds.

3) The Clerk of Court shall defer the entry of the grant of summary

judgment in ¶ 1 above until the conclusion of this case.

4)  A new scheduling order will be issued.

s/Sylvia H. Rambo
United States District Judge

Dated:  April 20, 2011.